| | | | |
|---|---|---|---|
| AO 91 (Rev. 11/11) Criminal Complaint | AUSA: Paul Kuebler<br>Special Agent: Derrick Bird, A.T.F. | Telephone: (313) 226-9641<br>Telephone: (313) 202-3450 | |

# UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

| | | |
|---|---|---|
| United States of America<br>　　v.<br>Jack Karl Johnson | Case No. | Case: 2:21−mj−30430<br>Assigned To : Unassigned<br>Assign. Date : 9/9/2021<br>Description: U.S. V. JOHNSON (CMP)(MEV) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __November 5, 2020__ in the county of __Wayne__ in the __Eastern__ District of __Michigan__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Distribution/Manufacturing/Possession with Intent to Distribute Controlled substances; |
| 21 U.S.C. § 846 | Conspiracy and Attempt to Distribute Controlled Substances |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Special Agent Derrick Bird, A.T.F.
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: __September 9, 2021__

_____
*Judge's signature*

City and state: __Detroit, Michigan__　　Hon. Kimberly Altman, U.S. Magistrate Judge
　　　　　　　　　　　　　　　　　　　　　　　　　*Printed name and title*

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

I, Special Agent Derrick Bird, being first duly sworn, hereby depose and state the following:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the United States Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7); that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516. I have been employed as a Special Agent with the ATF since March 2016. I am currently assigned to Group VII in the Detroit Field Division. I have conducted or participated in numerous criminal investigations including firearms offenses, illegal drug distribution, and organized crime/criminal street gangs. Prior to being employed as a Special Agent, I was a Correction Officer with the Washtenaw County Sheriff's Office for over four years.

2. I am a graduate of the Criminal Investigator Training Program and the ATF Special Agent Basic Training Program at the

Federal Law Enforcement Training Center in Glynco, Georgia. I graduated from Auburn University and earned a Bachelor's Degree in Sociology as well as a Masters of Arts Degree in Higher Education Administration. As an ATF Special Agent, I have participated in federal investigations involving the illegal acquisition, distribution, and possession of firearms. During these investigations, I have participated in physical surveillance operations and have participated in the execution of federal arrest and search warrants. In addition to utilizing the aforementioned investigative techniques, I have been required during these investigations to analyze information resulting from traditional record searches, as well as reviewing previous case files. Through my training and experience, I have become familiar with the manner in which firearms are transported and distributed, the methods of payment for firearms, and the manner in which firearm traffickers communicate with each other.

3. I am involved in the narcotic trafficking investigation of Jack Karl JOHNSON, date of birth XX/XX/1984. This affidavit is made in support of an application for a criminal complaint for JOHNSON

charging him with violations of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846.

4. I make this affidavit in part based on my personal knowledge derived from my participation in this investigation, and in part based on information gathered from undercover narcotic purchase, surveillance, and analysis of cell phone toll records. Because this affidavit is being submitted for the limited purpose of establishing probable cause for a criminal complaint, I have not included each and every fact known to me concerning this investigation. Rather, I have set forth facts that I believe are necessary to establish probable cause of violations of a federal criminal offense, specifically Title 21 U.S.C. § 841(a)(1) (Distribution/Manufacturing/Possession with Intent to Distribute) and Title 21 U.S.C. § 846 (Conspiracy/Attempt).

## BACKGROUND OF INVESTIGATION

5. In the month of October 2020, your affiant received information from an ATF Confidential Informant (CI) that he/she was aware of an individual (later identified as Jack JOHNSON) distributing crack cocaine and heroin in the area of Warren and Plainview in Detroit. The CI advised that the target (JOHNSON) would also be able

3

to provide firearms. The CI provided the telephone number 313-208-XXXX ("Subject Phone Number") belonging to JOHNSON (later identified subscriber information registered to "Jack k Johnson").

## PROBABLE CAUSE

6. On November 5, 2020, an ATF undercover agent (UCA) and CI met JOHNSON in front of the residence XXXX Plainsview Avenue in Detroit, Michigan (the "Residence"), where the UCA conducted an undercover controlled purchase of approximately 2.4 grams of crack cocaine. Prior to the meeting, the CI engaged in cell phone communication with JOHNSON, aka "Note", at phone number Subject Phone Number, for the purpose of arranging the undercover purchase of crack cocaine. On Friday, October 30, 2020, the CI sent a text message to JOHNSON stating "Yo". On Saturday, October 31, 2020, JOHNSON responded stating, "I had to buy from a different nigga he taxing 225 per. I'm giving you my price he giving me. The other nigga just got flicked with all kinds of shit on him". The CI responded on the same day stating "Ok". On Sunday, November 1, 2020, JOHNSON sent a text message to the CI stating, "What happened". The CI responded, "I have a family emergency". JOHNSON replied, "Ok well I got it" and

4

"Hope things are ok". The CI responded stating, "I had to go out of town I will be back Wednesday" and "I still need it". JOHNSON replied stating, "I got it". The CI replied, "Cool". On Wednesday, November 4, 2020, the CI sent a text message to JOHNSON stating, "Yo 225 for tomorrow at 1 right". JOHNSON replied, "Yes. I was slumped". The CI replied, "Cool".

    7.    On November 5, 2020, the UCA met with the CI with the plan of meeting JOHNSON to purchase the previously discussed crack cocaine. The UCA observed JOHNSON standing in the driveway of the Residence and an unidentified male/black sitting on the porch. JOHNSON approached the undercover vehicle (UCV) and greeted the CI. The CI got into the back passenger seat of the vehicle and JOHNSON got into the front passenger seat of the UC vehicle and greeted the UCA. During conversation between the UCA, JOHNSON, and the CI, JOHNSON stated that he had recently sold the previously discussed crack cocaine to another individual but that he had "twenty five bags" that he would sell the UCA. JOHNSON then handed the UCA a black plastic baggie containing numerous clear plastic baggies of white rock substance consistent with crack cocaine. The UCA then

5

handed JOHNSON previously photocopied buy money. After the narcotic transaction was complete, the parties discussed the purchase of a "glock" style firearm that JOHNSON and the CI had discussed. JOHNSON stated that if the UCA gave him $340.00 and a carton of cigarettes that JOHNSON would consider selling the UCA the firearm. JOHNSON stated that he had a "glock", an "eighteen round clip" and "a box of bullets". The UCA agreed and JOHNSON exited the vehicle, walked toward the front porch of the residence, and spoke to the unidentified male sitting on the front porch. JOHNSON walked back to the UCV and informed the UCA that "he can't sell it until it's reported stolen". The UCA told JOHNSON to tell the unidentified male (UM#1) to come to the vehicle. JOHNSON agreed and told UM#1 to come to the vehicle. The parties discussed UM#1 selling the firearm and UM#1 wanted to report the firearm stolen prior selling it to the UCA. The UCA asked if the firearm was "here" to which UM#1 affirmed. UM#1 did not want to sell the firearm until he reported it stolen so the parties agreed and JOHNSON and UM#1 walked away from the UCV. The CI got into the front passenger seat of the UCV and the parties drove away from the location.

8. On January 16, 2021, your affiant was notified that a non-fatal shooting occurred at the Residence (the aforementioned controlled purchase address) and the victim is currently not cooperating with law enforcement.

9. On January 25, 2021, an undercover agent (UCA) met with Jack JOHNSON, and a known male (KM#1) (later identified). Prior to the meeting, the undercover agent engaged in cell phone communication with JOHNSON, aka "Note", at phone number Subject Phone Number, for the purpose of arranging the undercover purchase of heroin. At approximately 2:42 pm, the UCA arrived at a pre-determined location. The UCA observed JOHNSON standing in front of the location wearing a black hoodie and black sweat pants. The UCA parked in front of the location and JOHNSON got into the passenger seat of the UC vehicle (UCV). JOHNSON informed the UCA "he told me to call him when we got here", indicating he (JOHNSON) needed to call an unidentified individual when he (JOHNSON) was with the UCA. JOHNSON then made an outgoing call on his cellular telephone. The UCA observed the contact was listed under the contact "D" and the first three numbers of "D"'s telephone number were "248". JOHNSON

7

stated "D" was coming from "Warren and Evergreen". The call was not answered at that time. JOHNSON began conversing with the UCA about how his residence was "shot up" and how he was almost killed. JOHNSON stated that individuals knocked on his door and when he opened his door the individuals began firing inside the house. JOHNSON stated that he began shooting back at the individuals with a "two-two", (.22 caliber), that was made by "Glock".

10. Later, JOHNSON then received a call from "D" and the parties began to discuss their current locations. The parties agreed to meet at the Subway located at XXXXX Joy Rd, Detroit, Michigan. At this time the UCA and JOHNSON drove in the UCV to the Subway. The parties arrived at the location and JOHNSON made numerous calls to "D" in an effort to get him to meet at the location. At approximately 3:03 pm, the UCA observed a black GMC Yukon with chrome rims pull into the parking lot. JOHNSON stated "there he go", identifying the individual as the third party JOHNSON had communicated with on the telephone. The male driver backed into the parking spot to the passenger side of the UCV. The male, later identified as KM#1, stated he wished to change locations but the UCA

8

denied. At this time, JOHNSON exited the UCV and approached KM#1's driver side door. The UCA showed KM#1 and JOHNSON the currency which would be used to purchase the illegal narcotics. The UCA observed KM#1 hand JOHNSON a clear plastic baggie. At that time, JOHNSON turned back to the UCV and gave the UCA a clear plastic baggie of brown rock substance, believed to be heroin (approximately 14.7 grams). The UCA paid JOHNSON a quantity of U.S. Currency. The UCA then observed JOHNSON hand KM#1 the same currency paid to JOHNSON. JOHNSON then walked to the passenger side of KM#1's vehicle and got into the front passenger seat. The UCA then pulled away from the location.

  11. On May 13, 2021, subsequent to a Detroit Police Department (DPD) warrant arrest of JOHNSON, an ATF Task Force Officer (TFO) and your affiant interviewed JOHNSON, where JOHNSON made some of the following summarized statements:

- JOHNSON stated that he did have a gun in November 2020 but has not had a gun since then.
- JOHNSON stated he knew "doggy bone" (UCA) was an undercover and that he (JOHNSON) was selling drugs.

9

- JOHNSON denied stating that he returned fire on an individual that was shooting at the Residence where he was staying.

- JOHNSON stated that he sells drugs because people needed him. JOHNSON then stated he had not sold drugs since he sold to the undercover.

- JOHNSON stated that did not get his supplies (referring to narcotics) from anyone; he stated he made his own supply.

- JOHNSON stated he was in the backyard using his cousin's gun and shooting bottles. Your affiant advised, "you were doing that and you knew you weren't supposed to be around guns". JOHNSON replied, "absolutely, but it was just so fucking fun, I can't go to the gun range".

- JOHNSON admitted, "if I said that (referring to returning fire at an individual), it might was to get some street cred, but I ain't never did that".

- JOHNSON provided his phone number Subject Phone Number.

12. JOHNSON has the following felony convictions:

10

    a.    2005, dangerous drugs – controlled substance-del/mfg (cocaine, heroin or another narcotic) less than 50 grams, 3rd Circuit Court.

    b.    2007, motor vehicle-unlawful driving away, 3rd Circuit Court.

    c.    2009, home invasion- 1st degree, 3rd Circuit Court.

    d.    2018, weapons - carrying concealed, 3rd Circuit Court.

    e.    2018, weapons – firearms – possession by a felon, 3rd Circuit Court.

## CONCLUSION

13.    Based on the foregoing facts and circumstances, I respectfully submit that there is probable cause to believe within the Eastern District of Michigan, Jack JOHNSON did knowingly and

11

intentionally violate Title 21 U.S.C. § 841(a)(1) (Distribution/Manufacturing/Possession with Intent to Distribute) and Title 21 U.S.C. § 846 (Conspiracy/Attempt).

Respectfully Submitted,

_____
Derrick Bird, Special Agent
Bureau of Alcohol, Tobacco,
Firearms, and Explosives

Sworn to before me and signed in my
presence and/or by reliable electronic means.

_____
Hon. Kimberly Altman
United States Magistrate Judge

Dated:    September 9, 2021